In the Interest of S.A. and J.M.C.A., Minor Children,

P.A., Mother, Appellant.

No. 92–1867.

Court of Appeals of Iowa.

May 4, 1993.

William F. Creasey of Goedkin & Creasey, Muscatine, for appellant mother.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., Judy Sheirbon, Asst. Atty. Gen., and Ronald D. Arispe, Asst. County Atty., for appellee State of Iowa.

Neva Rettig Baker of Baker Law Office, Muscatine, guardian ad item for minor children.

Considered by SCHLEGEL, P.J., and HAYDEN and SACKETT, JJ.

SACKETT, Judge.

This is an appeal by the natural mother from a juvenile court order terminating the parental relationship between the mother, her daughter born November 9, 1985, and her son born December 29, 1989. The mother contends the State failed to prove the existence of statutory grounds for termination of parental rights by clear and convincing evidence; the proceeding leading to the termination of her parental rights was defective and violated both procedural and substantive due process rights; and the juvenile judge should not have admitted into evidence a statement written by the child's attorney and signed by the child. We affirm.

This is a difficult case. The mother loves her children, is bonded to them and they to her, and she has the capability to be an excellent mother. She is poor. She has a serious substance abuse problem that she has not been able to control. When she abuses alcohol and drugs, she is not capable of giving her children adequate care.

This family's situation first came to the attention of the State when the mother looked to the Department of Human Servic-

es in May 1987 to assist with the older child's care. At the time, the mother was abusing alcohol and/or drugs. The child was placed in foster care and the mother was admitted to the mental health institute. The mother subsequently was incarcerated. Then in March 1989, a petition was filed to terminate parental rights and on July 10, 1989, the petition was dismissed by the court. The court concluded the State did not show the child would suffer harm if returned home. The younger child, a boy, was born in December 1989, and was in his mother's care for thirteen months. On March 1, 1990, the older child was returned to her mother's care. However, the mother was scheduled to be sentenced on March 19, 1990 for a class D felony, operating a motor vehicle while intoxicated, 3rd offense, that had occurred in August 1989. The mother did not begin serving a sentence for this crime until January 25, 1991. However, in October 1990, the children were removed from their mother's care because the mother had not totally abstained from the use of alcohol and the mother left the child with inappropriate caretakers and the children's care was affected by the mother's drinking.

On November 6, 1990, the State got an emergency order removing both children because the mother was abusing alcohol. At a hearing on the emergency order, the court found the mother had consumed alcohol but had not abused her children and they remained in her care until January 25, 1991, when she was incarcerated for the third offense of operating a motor vehicle while intoxicated. The children were left with their father when the mother was incarcerated. Placement with the father was not successful and the children were put in foster care.

The mother was discharged from prison and placed on parole on July 25, 1991. The children were not returned to her. She followed probation directions and provided appropriate care for her children during visitation periods.

Then in October 1991, the mother was arrested for public intoxication and placed in a halfway house. She stayed in the halfway house but had a relapse early in March 1992.

A petition to terminate parental rights was filed on May 15, 1992. It proceeded to trial on July 1 and 2. On August 2, the mother's parole was revoked and she was returned to the women's reformatory in Mitchellville. Finally on November 12, 1992, the juvenile court terminated the mother's parental rights. The court terminated the mother's parental rights to her daughter under Iowa Code section 232.-116(1)(e) which provides:

e. The court finds that all of the following have occurred:

(1) The child is four years of age or older.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The court terminated the mother's parental rights to her son under Iowa Code section 232.116(1)(g) which provides:

g. The court finds that all of the following have occurred:

(1) The child is three years of age or younger.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as

provided in section 232.102 at the present time.

■ The mother first contends there is not clear and convincing evidence supporting termination. Her particular challenge is there is not clear and convincing evidence the children cannot be returned to her. We review de novo. *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987); *In re D.T.C.*, 336 N.W.2d 738, 740–41 (Iowa 1983). The record is replete with a number of instances the mother's substance abuse has created a danger to the children when they were in her care. There is clear and convincing evidence her substance abuse problem continues and she is not able to control her behavior. This problem will subject her children to danger if returned to her care. Her substance abuse problem prevents her from exercising the parenting skills necessary to assure her children's safety. The possibility of the problem being corrected in the future is remote. *In re D.E.D.*, 476 N.W.2d 737, 738 (Iowa App.1991). The court in *In re R.J.*, 436 N.W.2d 630, 637 (Iowa 1989), affirmed termination where the mother's alcoholism seriously impaired her ability to parent, as they did in *In re Dameron*, 306 N.W.2d 743 (Iowa 1981), where the mother abused alcohol and made only minimal efforts to obtain treatment. Applying the dictates of these cases, we determine the State has met its burden of showing by clear and convincing evidence that the children will suffer harm if returned to their mother's care.

The mother next contends the court has used as a basis for termination of parental rights the fact the children have been in foster care since April 11, 1991. She asserts that beginning on July 25, 1991, she was available and able to regain custody of the children but they were illegally and without justification kept from her care. She contends because the continued foster care of the children was not proper, it should not serve as a basis for terminating her parental rights. She says there is no evidence the children could not have immediately been returned to her when she was paroled on July 25, 1991, and the Department of Human Services did not assist her becoming reunited with her children.

■ The issue of continued foster care after the mother's release should have been raised by challenging the foster placement at the time. Matters not timely raised before the juvenile court need not be considered on appeal. *See In re V.M.K.*, 460 N.W.2d 191, 193 (Iowa App.1990).

The mother's last contention is the juvenile court should not have admitted a statement written by another and signed by the older child. The testimony was the statement had been dictated by the older child and she read it after it was typed. In the letter, the child said, "I don't want to try to live with my mom anymore. I want to be adopted and live with a real family." This matter was tried as an equitable action. However, the trial court ruled on the mother's objection and determined the letter was admissible. We are not certain what weight, if any, the juvenile court gave the letter.

■ We have reviewed the letter. A child's rights and needs are paramount in these proceedings. *See Dameron*, 306 N.W.2d at 745. There was evidence the child, after writing the letter, had guilty feelings. She loves her mother and does not want to hurt her. She is afraid her mother will be upset with her for writing the letter even though she wants her needs met. The State and the guardian ad litem contend the letter was admissible because hearsay is admissible in termination actions. There was no opportunity for the trial judge to determine the child's competency to testify or the child's ability to know right from wrong or to assess the child's understanding of the ramifications of her statements or to determine what influence may have been put on the child in writing the letter. This child is significantly bonded to her mother. She will not forget her. During the proceeding, she has continually manifested her love for her mother. Termination only severs the legal ties, it does not sever biological ties. Termination does not guarantee the children will have a successful adoptive placement. This is a review de novo. We do not consider the letter in our determination. The

other evidence clearly supports the termination.

We affirm the termination. We recognize we have no assurance these children will find satisfactory adoptive homes.

**AFFIRMED.**

HAYDEN, J., specially concurs.

HAYDEN, Judge (specially concurring).

I concur specially.

I have yet to see a termination case that has not been difficult to decide. Not only are termination cases difficult to decide on appeal, but they are no less difficult to adjudicate in the trial court setting.

Unlike the majority, I do consider the letter in question in my determination of this appeal. I recognize it was written by someone else for the daughter to sign. The daughter was approaching seven years of age at the time of trial. I take into consideration she is young and of tender years. She, no doubt, was concerned about her mother's reaction to her. Also, she had feelings of guilt and concern. I consider these and all other attendant circumstances surrounding the drafting of the letter and the daughter affixing her signature to it. I give it the consideration and weight to which it is entitled and not anything more or less. I do not disregard the letter based upon speculation or conjecture.

Termination may not guarantee these children a successful adoptive placement. However, it will provide them an opportunity for a better future than they have experienced with their mother or father in the past.

Children cannot be forced to await the maturity of their parents. *In re M.L.W.*, 461 N.W.2d 609, 611 (Iowa App.1990) (citation omitted).

For these reasons, I specially concur with the majority.