In the INTEREST OF A.B., A Minor
Child, T.B., Father, Appellant.

No. 96–290.

Court of Appeals of Iowa.

Aug. 30, 1996.

William J. Bishop of John T. Bribriesco Law Offices, Bettendorf, for appellant.

Thomas J. Miller, Attorney General, Diane Stahle, Special Assistant Attorney General, Maureen McGuire, Assistant Attorney General, William E. Davis, County Attorney, and Gerda C. Lane, Assistant County Attorney, for appellee.

Considered by HABHAB, P.J., and HUITINK and STREIT, JJ.

HABHAB, Presiding Judge.

Appellant father, Terrelle [1], appeals from the termination of his parental rights.[2] He argues there was not clear and convincing evidence he had abandoned or deserted his child, there was not clear and convincing evidence the child could not be returned to his care as provided in section 232.102, and there was not clear and convincing evidence to support the termination under section 232.116(1)(f). We affirm.

Terrelle and Tamesia are the parents of Ashakala, born October 12, 1990. Tamesia and Terrelle are not married and do not reside together. At the time of Ashakala's birth, Terrelle was approximately sixteen years old and was attending high school.

From January 1991 until approximately July 1993, Ashakala lived primarily with Tennille Davis, Tamesia's cousin, and with Tennille's mother. Ashakala visited with Terrelle and his mother on and off during that period. Terrelle testified Ashakala's longest consecutive stay with him and his mother was approximately four months in 1992. From approximately July 1993 until June 1995, Ashakala lived with her maternal grandmother, Ruthelle.

On May 5, 1994, the court entered an order adjudicating Ashakala a child in need of assistance ("CINA"). This adjudication occurred after Ashakala's half-brother was born in March 1994 with five illegal substances in his bloodstream. The June 10, 1994, dispositional order gave the maternal grandmother, Ruthelle, custody of Ashakala. While in Ruthelle's custody, Terrelle visited and cared for Ashakala on intermittent weekends, holidays, and her birthday. He also bought her clothing and gifts.

After a review hearing in June 1995, Ashakala was placed in the custody of the Iowa Department of Human Services ("DHS") for placement in foster care because the maternal grandmother could no longer care for her. Terrelle signed a DHS treatment plan on August 16, 1995. The plan outlined his responsibilities, including regular visitation with Ashakala, completion of a drug/alcohol evaluation by September 16, and weekly meetings with the caseworker for parenting skill training and to monitor his progress.

Terrelle did not comply with the treatment plan. While in foster care, Terrelle only visited Ashakala twice, on August 23 and on December 26 when he brought her Christmas gifts.

For a majority of the period since Ashakala's birth, Terrelle has resided with his mother. He briefly lived with a girlfriend in 1994 but was residing with his mother at the time of the termination hearing. He has four other children in addition to Ashakala, none of whom are in his full-time care.

On October 30, 1995, the State filed a petition to terminate the parental rights of Tamesia and Terrelle. On January 16, 1996, the court entered an order terminating their parental rights. The court determined Terrelle had abandoned Ashakala, Iowa Code section 232.116(1)(b) (1995), and she could not be returned to his care without remaining a child in need of assistance. Iowa Code § 232.116(1)(e) (1995). Terrelle now appeals.

---

1. The briefs and record contain several different spellings for the parents' names. For the purposes of this opinion, we have used the spellings contained in the transcript from the termination hearing.

2. The mother has not appealed the termination of her parental rights.

**I. Standard of Review.** We utilize de novo review in determining if there is clear and convincing evidence to support the termination of parental rights. *See In re S.A.,* 502 N.W.2d 23, 25 (Iowa App.1993). A child's rights and needs are paramount in termination proceedings. *In re S.A.,* 502 N.W.2d at 25. The primary concern is the best interests of the children.

> We look to the child's long-range, as well as immediate, interests. We consider what the future holds·for the child if returned to his or her parents. Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing. Our statutory termination provisions are preventative as well as remedial. They are designed to prevent probable harm to a child.

*In re R.M.,* 431 N.W.2d 196, 199 (Iowa App. 1988) (citations omitted).

**II. Section 232.116(1)(b).** Terrelle claims there was not clear and convincing evidence he had abandoned[3] or deserted[4] his child. The juvenile judge based his ruling on a finding that Terrelle had abandoned Ashakala. Abandonment is characterized as a giving up of parental rights and responsibilities accompanied by an intent to forego them. *In re D.M.,* 516 N.W.2d 888, 891 (Iowa 1994). Two elements are involved in this characterization. First, the giving up of parental rights and responsibilities refers to conduct. *Id.* Second, the intent element refers to the accompanying state of mind. *Id.* Parental responsibilities include more than subjectively maintaining an interest in a child. The concept requires affirmative parenting to the extent it is practical and feasible in the circumstances. *See id.*

Terrelle's daughter was placed in foster care in June 1995 and he has had only two visits with her since. Terrelle offered no reasons which would excuse his failure to maintain regular contact with his child. For the first five years of her life, Ashakala was shuttled among different relatives. Terrelle never paid regular support for her and did not see that she had stability or certainty in her place of residence.

Rather than affirmatively parent, to the extent it was practical and feasible for him to do so, Terrelle appears only to have parented Ashakala when it was convenient for him. After her placement in foster care, he failed to comply with the requirements of the treatment plan and saw her only twice. For all intents and purposes he abandoned his daughter.

**III. Section 232.116(1)(e).** Terrelle concedes the first three elements of section 232.116(1)(e) were met.[5] He disputes whether the fourth element was proven by clear and convincing evidence. The require-

---

3. *"Abandonment of a child"* means the relinquishment or surrender, without reference to any particular person, of the parental rights, duties, or privileges inherent in the parent-child relationship. Proof of abandonment must include both the intention to abandon and the acts by which the intention is evidenced. The term does not require that the relinquishment or surrender be over any particular period of time.
Iowa Code § 232.2(1) (1995).

4. *"Desertion"* means the relinquishment or surrender for a period in excess of six months of the parental rights, duties, or privileges inherent in the parent-child relationship. Proof of desertion need not include the intention to desert, but is evidenced by the lack of attempted contact with the child or by only incidental contact with the child.
Iowa Code § 232.2(14) (1995).

5. Except as provided in subsection 3, the court may order the termination of both the parental rights with respect to a child and the relationship between the parent and the child on any of the following grounds:
    . . . .
    The court finds that all of the following have occurred:
    (1) The child is four years of age or older.
    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
    (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
    (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.
    Iowa Code § 232.116(1)(e) (1995).

ment of section 232.116(1)(e)(4) is met when a child cannot be returned to the parental home after twelve months because the definitional grounds of a "child in need of assistance" still exist. *See In re K.L.C.,* 372 N.W.2d 223, 228 (Iowa 1985). Terrelle contends he could have satisfied the DHS case plan if he had been given more time. Terrelle was given one month to complete a substance abuse exam and he did not do so. He was to have regular contact with his daughter and saw her only twice in five months. He did not maintain weekly meetings with a case worker. Terrelle had adequate time to comply with the plan and chose not to do so.

■■■ Terrelle alternatively argues reasonable efforts were not made to prevent or eliminate the conditions which would result in a CINA adjudication if Ashakala were returned to his care. Reasonable efforts to reunite parent and child are required prior to the termination of parental rights. *In re T.C.,* 522 N.W.2d 106, 108 (Iowa App.1994). *See generally* Iowa Code § 232.102. Generally, DHS must make reasonable efforts to provide services to eliminate the need for removal. *See* Iowa Code § 232.102(9)(a) (1995).

Reasonable efforts were made in this case. Terrelle failed to comply with the case plan. Had he exercised regular visitation with his daughter, DHS would have been able to assess his parenting abilities. Terrelle appeared satisfied to allow his daughter to reside with the most available relative. In addition, he was content with having her reside wherever DHS would place her. In both instances, he was content only to occasionally visit her. There was nothing to indicate Terrelle had changed, and it is likely Ashakala would remain a child in need of assistance if placed in his care.

*IV. Section 232.116(1)(f).* For his final argument, Terrelle argues there was not clear and convincing evidence to terminate his parental rights on the basis of section 232.116(1)(f) (termination of parental rights to sibling, parent lacks ability or willingness to respond to services, and additional period of rehabilitation would not correct situation). The State correctly points out the juvenile judge only relied on this statute as a ground for terminating Tamesia's parental rights. We need not address the applicability of the statute to Terrelle.

**AFFIRMED.**