# IN THE COURT OF APPEALS OF IOWA

No. 15-0860
Filed July 22, 2015

**IN THE INTEREST OF T.H., Minor Child,**

**J.G., Father,**
　　Appellant.

_____

　　Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

　　A father appeals the termination of his parental rights to his six-year-old daughter. **AFFIRMED.**

　　Andrew Tullar of Tullar Law Firm, P.L.C., Des Moines, for appellant.

　　Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Christina Gonzalez, Assistant County Attorney, for appellee.

　　Raya Dimitrova of Carr & Wright, Des Moines, for mother.

　　M. Kathryn Miller of Juvenile Public Defender's Office, Des Moines, attorney and guardian ad litem for minor child.

　　Considered by Potterfield, P.J., and Tabor and McDonald, JJ.

**TABOR, J.**

T.H. is six years old and has not seen her father, Jason, since October 2013. The juvenile court terminated Jason's parental relationship with T.H. in April 2015. Jason appeals that termination, claiming after he was released from custody in October 2014, he was not "given the opportunity to show he had reformed and that he could take the necessary steps to safely care for [his daughter]." He argues the State did not prove the statutory grounds for termination under Iowa Code section 232.116(1) (2013) by clear and convincing evidence. He also claims the court should not have terminated his rights because T.H. is in the custody of a relative. *See* Iowa Code § 232.116(3)(a).

Because Jason has not maintained significant and meaningful contact with T.H., we affirm the termination order under section 232.116(1)(e). We also conclude T.H.'s placement with her paternal grandfather is not reason to postpone permanency in this case.

Jason was incarcerated for domestic abuse assault when T.H. came to the attention of the Iowa Department of Human Services (DHS) in February 2014. The child was staying with her paternal grandmother, who tested positive for cocaine. The juvenile court removed T.H. from that home and adjudicated her as a child in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(c)(2), (n), and (o) on March 14, 2014.[1]

The DHS placed T.H. in foster care in Des Moines. She was diagnosed with reactive attachment disorder and attended therapy. In April 2014, T.H.'s

---

[1] The whereabouts of T.H.'s mother were not known at this time. The mother's parental rights were also terminated, but she is not a party to this appeal.

therapist described her as very anxious; the child drew pictures depicting her father as a snake biting her. According to DHS reports, the trauma suffered by T.H. related to her witnessing domestic violence and being left alone for extended periods of time. In early September, T.H.'s therapist reported the girl's symptoms were severe and she was "barely keeping her head above water." The therapist believed it was important for T.H. to have a long-term caregiver and recommended placement with the child's paternal grandfather in Illinois to forge a much-needed attachment.

Because neither of T.H.'s parents was participating in services, on September 23, 2014, the State filed an application to waive reasonable efforts. The parents resisted. The juvenile court held a contested hearing on October 10, 2014. Jason did not appear at the hearing,[2] but was represented by counsel. Following the hearing, the court issued an order waiving reasonable efforts under section 232.102(12). The court found aggravated circumstances, as follows:

> The child has serious mental health diagnosis, due to her history of trauma, and has been unable to make progress in addressing those issues due to a lack of permanent caregiver. The child's therapist reported that to make therapeutic progress, the child needs to focus on building attachment with her long-term placement. Unfortunately, neither parent has participated in services or made a commitment to be a long-term placement for the child.

The court also placed T.H. with her paternal grandfather. According to the court, the grandfather was committed to being a long-term placement for T.H., passed

_____

[2] Jason had been incarcerated at the Newton, Iowa, Correctional Facility until September 2014 when he was transported to the Henry County, Illinois jail. At the time of the hearing on waiving reasonable efforts, he was in the custody of Missouri authorities. Jason asserts that on or about October 13, 2014, he was released from custody and returned to stay with family in Illinois.

appropriate background checks, maintained contact with her, met with her therapist, and sought services for her in Illinois.

On November 14, 2014, the State filed a petition to terminate parental rights. At the February 25, 2015 termination hearing, the father and the DHS social worker testified. The court issued an April 29, 2015 order terminating parental rights under sections 232.116(1)(b), (d) and (e). Jason challenges all three grounds on appeal.

We review orders terminating parental rights de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We will uphold the order if the juvenile court's findings of fact are supported by clear and convincing evidence. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence qualifies as "clear and convincing" when we harbor no serious or substantial doubts as to the correctness of the conclusions of law drawn from the proof. *Id.* When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find support for one ground to affirm. *In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014).

In this case, we focus on section 232.116(1)(e), which requires clear and convincing evidence of the following elements: (1) the child has been adjudicated a CINA, (2) the child has been removed from the physical custody of the parent for a period of at least six consecutive months, and (3) the parent has not maintained significant and meaningful contact with the child during the previous six consecutive months and has made no reasonable efforts to resume care of

the child despite being given the opportunity to do so. *See* Iowa Code § 232.116(1)(e).

> This section defines "significant and meaningful contact" as:
>
> [T]he affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

Iowa Code § 232.116(1)(e)(3).

Jason does not claim he maintained significant or meaningful contact, only that he was denied the opportunity to do so based on the therapist's recommendation and the fact that DHS was not required to facilitate contact after the order waiving reasonable efforts. Jason argues he wanted to visit T.H., tried to communicate through relatives, and desired to comply with the DHS case plan.

Reasonable efforts to reunite parent and child are required before the termination of parental rights. *In re A.B.*, 554 N.W.2d 291, 294 (Iowa Ct. App. 1996). But reasonable efforts can be waived in limited specified circumstances set forth in Iowa Code section 232.102(12). The State moved to waive the reasonable efforts requirement and the court found wavier was appropriate given the child's mental health needs and other aggravating circumstances present in this case. Jason does not expressly challenge the waiver and therefore we do not address it on appeal. *Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996)

("our review is confined to those propositions relied upon by the appellant for reversal on appeal").

After our de novo review of the record, we find the State offered clear and convincing evidence to support paragraph (e). Jason has not seen T.H. since October 2013 and has not consistently provided financial support for her. Jason testified he wanted to visit T.H. but her therapist recommended against it because it would disrupt her progress in dealing with her reactive attachment disorder. This recommendation relates to Jason's own behavior. The record reflects T.H. was present during Jason's commission of domestic violence. Jason has no one but himself to blame for not being able to interact with his daughter. Although Jason completed a batterers' education program while incarcerated, he did not enroll in additional therapy until February 2015. Jason's own criminal actions have prevented him from having significant and meaningful contact with T.H.

Jason also argues the district court should have applied section 232.116(3)(a) to save the parent-child relationship. The court need not terminate if "a relative has legal custody of the child." Iowa Code § 232.116(3)(a); *A.M.*, 843 N.W.2d at 113. In this case, the paternal grandfather does not have legal custody; the child is only placed with him. The grandfather and his wife are planning to adopt T.H. We conclude it is in her long-term best interest to move toward that adoption through termination of her father's parental rights.

**AFFIRMED.**