# IN THE COURT OF APPEALS OF IOWA

No. 15-1096
Filed September 10, 2015

**IN THE INTEREST OF J.R. and N.B.,**
**Minor Children,**

**L.C., Mother,**
     Appellant,

**J.R., Father,**
     Appellant.
_____

Appeal from the Iowa District Court for Polk County, Louise Jacobs, District Associate Judge.

A mother and father appeal separately from the order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Lynn C.H, Poschner of Borseth Law Office, Altoona, for appellant mother.

Steven L. Cooper of Cooper, Goedicke, Reimer & Reese Law Firm, P.C., West Des Moines, for appellant father of J.R.

Jason Rieper, Des Moines, for father of N.B.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd and Kathryn K. Lang, Assistant Attorney General, John P. Sarcone, County Attorney, and Kevin Patrick and Stephanie Brown, Assistant County Attorneys, for appellee State.

Erin Mayfield of the Youth Law Center, Des Moines, for minor children.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**PER CURIAM**

The mother of J.R. and N.B. and the father of J.R. appeal separately from the juvenile court order terminating their parental rights.[1]  The mother maintains that both children could have been returned to her care at the time of the termination hearing, termination is not in the best interests of the children, and termination is not necessary because both children are in the legal custody of family members.  The father maintains he should receive an extension of time for reunification, termination is not in J.R.'s best interests, the State failed to make reasonable efforts, and termination is not necessary because J.R. is in the legal custody of a family member.

The mother has failed to take any steps to address her use of methamphetamine, and the children have been out of her custody for over two years.  In regard to the mother, we conclude the children could not be returned to her care at the time of the termination hearing, termination was in the children's best interests, and no factor weighs against termination.  The father refused to cooperate with DHS after making threats of violence towards others involved in the case and speaking of harming himself.  Thus, an extension of time was not warranted, termination is in J.R.'s best interests, and no factor weighs against termination.  We affirm the juvenile court's order terminating the rights of both parents.

**I. Background Facts and Proceedings.**

The family first came to the attention of the Iowa Department of Human Services (DHS) in 2011 when the mother was stopped by police and found to

---

[1] The parental rights of N.B.'s father have not been terminated.

have methamphetamine and prescription medications in her possession. At the time, N.B. was also in the vehicle and J.R. was not yet born. The mother was criminally charged and ultimately placed on probation. As part of the terms of her probation, the mother was required to submit to drug testing as ordered.

Approximately two years later, in July 2013, the mother tested positive for methamphetamine. When asked, the mother admitted she was using several times per week. N.B. and J.R. (born in April 2012) were removed from the mother's care. Both were placed with their respective fathers.

On September 3, 2013, both children were adjudicated to be children in need of assistance. The court noted the mother had ongoing issues with depression and the use of methamphetamine.

Between September 3 and October 15, 2013, the mother tested positive for methamphetamine twice.

J.R.'s father did not cooperate with the interaction and visitation schedule set up by DHS for J.R. and the mother. At the dispositional hearing on October 15, 2013, the court specifically informed the father that he was required to cooperate. DHS expressed frustration in its efforts to reunify the mother with J.R. due to the father's interference with visitation and his attempt to exercise control over whether visitation should occur.

The father's interference with visits escalated following the dispositional hearing. On December 2, 2013, the father would not answer phone calls from the family support worker who was trying to set up a visit.

On December 12, 2013, the State filed a motion asking the court to hold the father in contempt for interfering with the mother's visitation.

The father allowed a visit on December 18, 2013, but at the visit the mother reported that she had received more than 1800 texts from the father and some of them were threatening towards her and DHS. She reported that some messages included references to "dead people" and the father "killing himself." She received those messages after the father showed up unexpectedly at her residence and she refused to allow him inside.

On January 3, 2014, the State filed a motion to modify disposition. Because of the "disturbing messages and/or threats of violence by [the father] towards himself and/or others," the State asked the court to order the immediate removal of J.R. from the father's care and place him in the custody of DHS for the purpose of foster care placement. The same day, the juvenile court granted the motion. When the family support worker went to J.R.'s daycare to pick him up, the father's mother was present and told the worker to leave immediately "because [the father] was on his way, and she was afraid of what he would do when he arrived." The worker left, and no immediate interaction with the father occurred. However, the same day J.R. was removed, the father sent Jonah Parks, the current DHS caseworker an email stating, "Mr. [P]arks you are a dead man. Return my son now and you live." The father also called and texted the family support worker "repeatedly" and "only stopped when the police arrived at her home to take her statement." The father was arrested on first-degree harassment charges. He ultimately pled guilty to the charges, and no-contact

orders were put in place requiring new caseworkers and family support workers to become involved with the case.[2]

As a result of his actions, DHS required the father to obtain a mental health evaluation and to follow all recommendations. All visits were suspended until he complied with the requirement.

The mother tested positive for methamphetamine in April 2014. She then failed to show up for drug testing fourteen times between April 22 and July 7, 2014. The mother admits she stopped seeing her drug counselor in May 2014 and has not seen one since. She also admits that she "relapsed" sometime between April and July 2014. The last drug screen she provided was the positive test in April 2014. She never provided a negative drug screen throughout these proceedings.

The father did not comply with the requirement of obtaining a mental health evaluation until the fall of 2014. After he completed the evaluation, the father initially provided a release for DHS, and a discussion with the evaluator was planned. However, before the discussion took place, the father revoked the release. After the evaluator learned the father had withheld information regarding the harassment charges and the contact he had initiated with DHS, the therapist recommended the father obtain a psychiatric evaluation. The father refused to comply with the recommendation and stated he was finished working with DHS.

---

[2] The father continued to send communications with derogatory language, threats, and various demands throughout the pendency of the case. He offered to "settle now for [his] son back, $15 million and all cases dropped!" He also sent the caseworker supervisor an email stating, "F*ck you c*nt. F*ck you. Return my son." Other times, he sent emails ordering DHS not to allow J.R. to have visits with the mother.

The State filed the petition to terminate both the mother's and father's parental rights on November 25, 2014.

At the termination hearing, held on January 30, 2015, the mother maintained that she had completed substance abuse treatment, but she could not provide information of when she had done so or proof she had completed it. She stated she had not complied with any drug testing due to transportation issues.

At the termination hearing, the father reaffirmed that he did not intend to obtain a psychiatric evaluation even though he was required to do so for visitation by DHS and as a requirement of his probation. The father had only one visit with J.R. after he was removed in January 2013.[3]

On June 19, 2015, the juvenile court filed the order terminating the mother's parental rights to N.B. pursuant to Iowa Code section 232.116(1)(d), (e), and (f) (2015) and to J.R. pursuant to section 232.116(1)(d), (e), and (h). The father's parental rights to J.R. were terminated pursuant to section 232.116(1)(e) and (h).

The mother and father appeal separately.

## II. Standard of Review.

We review de novo proceedings terminating parental rights. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the juvenile court's findings, especially assessing witness credibility, although we are not bound by them. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). An order terminating

---

[3] The visit occurred after the father obtained the mental health evaluation before he revoked his release.

parental rights will be upheld if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116. *Id.* Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *Id.*

**III. Discussion.**

Termination of parental rights under chapter 232 follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, the court must determine if a ground for termination under section 232.116(1) has been established. *See id.* Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *See id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory exceptions set forth in section 232.116(3) should serve to preclude the termination of parental rights. *See id.*

**A. Mother's Appeal.**

**1. Statutory grounds.** When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground we find supported in the record. *D.W.*, 791 N.W.2d at 707.

Iowa Code section 232.116(1)(f) provides that termination may be ordered when there is clear and convincing evidence the child is four years of age or older, had been adjudicated a CINA, has been removed from the parent's custody for at least twelve of the last eighteen months, and cannot be returned to the parent's custody at the time of the termination hearing. Section 232.116(1)(h) provides that termination may be ordered when there is clear and

convincing evidence the child is three years of age or younger, had been adjudicated a CINA, has been removed from the parent's custody for at least six of the last twelve months, and cannot be returned to the parent's custody at the time of the termination hearing

Here, the mother disputes that the State proved by clear and convincing evidence that the children could not be returned to her care at the time of the termination hearing. The mother maintains that because she had a residence with enough bedrooms and toys for the children and had consistently attended the visits offered to her, the children could be returned to her care.

Although the mother was living in a three-bedroom home at the time of the termination hearing, there were ongoing concerns about the mother's residence. When a support worker visited the residence to approve it for visits, the mother refused to let the worker into her bedroom and the basement of the home. The worker believed the mother was hiding something in those rooms—possibly items belonging to a roommate or paramour that she had not disclosed to DHS. As a result, the home was not approved by DHS. Based on his observations, the worker also believed the mother was still using methamphetamine. Although the mother testified she had not used methamphetamine since June or July 2014, the mother had not provided a single drug test since April 2014 and had stopped seeing her drug counselor at approximately the same time. The last test she provided was positive for methamphetamine. Because of the mother's failure to follow through with DHS requirements regarding drug counseling and testing, visits with the children never progressed to unsupervised visits or overnight visits.

The State proved by clear and convincing evidence the children could not be returned to the mother's care at the time of the termination hearing.

**2. Best interests of the children.** The mother maintains termination of her parental rights is not in the best interests of J.R. and N.B. She maintains that the children are bonded with her and will be negatively impacted.

Daniel McClung, one of the family's service providers, testified about the bond between the mother and the children. He testified that both children are happy to see their mother at visits and seem to look forward to the visits. The mother is appropriate at visits and has never needed to be redirected. McClung testified "it might be traumatic" for J.R. if the mother's rights are terminated. The mother discontinued her counseling and had the opportunity to undergo drug testing to prove she is not an active user of methamphetamine but did not. "[A] child's safety and his or her need for a permanent home" are "the defining elements in a child's best interests." *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially)). We observe that J.R. was under three years of age at the time of the termination proceeding and had been out of the mother's care for approximately eighteen months. During those eighteen months, the mother failed to establish she can safely parent the children. "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). J.R. was "very happy" in the home of his paternal uncle and "continued to do well." The family expressed they were "willing and committed to [J.R.]" and wanted to adopt him if the parental rights were terminated. We believe the need to preserve the

mother-child bond is outweighed by the children's needs for safety and a permanent home. Thus, we find termination is in the children's best interests.

**3. Permissive factors.** The mother maintains termination was not necessary because N.B. is in the legal custody of his father and J.R. is in the legal custody of his paternal uncle.

Upon our de novo review, we agree with and adopt the district court's conclusions concerning the permissive factors:

> It is important that the custodians of the children be able to have every tool to control the interjection of either [the mother] or [the father] into the lives of the children until they address the issues of concern presented; they have made so little progress. [The mother's] and [the father's] challenges include aspects of unreasonable control, interference into the role of custodians, and a history of disregarding boundaries. Because the children are placed with another parent (as to [N.B.]) and with an uncle (as to [J.R.]), it gives [the mother] and [father] the opportunity for children to still have connection with their biological families. However, at this time, the safety and best interest of the children requires termination of the parental rights of [the mother] and [father], without application of any exceptions.

We agree that no permissive factor weighs against the termination of the mother's parental rights to N.B. and J.R.

**B. Father's Appeal.**

**1. Reasonable efforts.** The father claims the State failed to make reasonable efforts for reunification. When a child is removed from the parents' care, the State is responsible for making "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interest of the child." Iowa Code § 232.102(7). "Reasonable efforts" means those efforts that "make it possible for the child to safely return to the family's home." *Id.* § 232.102(10)(a). The State must exert reasonable efforts to reunite parent and

child before parental rights are terminated. *In re A.B.*, 554 N.W.2d 291, 294 (Iowa Ct. App. 1996). What constitutes reasonable efforts to provide services varies, depending on the requirements of each case. *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) (noting focus is generally on services to improve parenting). "The concept of reasonable efforts broadly includes a visitation agreement designed to facilitate reunification while protecting the child from the harm responsible for the removal." *Id.* (internal quotation marks omitted).

The father maintains he was not given "sufficient opportunity to demonstrate his parenting ability" because the State failed to provide visits to the father after J.R. was removed from his care. Here, the question was not whether the father had the necessary parenting skills because the father created his own problems due to his threats of violence towards others and statement about harming himself. It was reasonable for DHS to limit the father's interactions with J.R. until it was determined whether he was a threat to J.R.'s or the workers' physical safety. The father also refused to complete the evaluations or sign releases to allow DHS to review the information. The State did not fail to make reasonable efforts.

**2. Statutory grounds**. The father does not dispute that the statutory grounds pursuant to Iowa Code section 232.116(1)(h) have been met for the termination of his parental rights to J.R. Nonetheless, the father maintains he should receive a six-month extension to work towards reunification. An extension is only appropriate when "the need for removal of the child from the child's home will no longer exist at the end of the additional six months." *See* Iowa Code § 232.104(2)(b). Here, the main concern was the uncertainty

regarding the father's mental health and the possibility of a violent outburst. Although he was ordered to complete a psychiatric evaluation as part of the case plan and as part of his probation for the harassment conviction, the father refused to do so. At the termination hearing, he reaffirmed that he had no intention to follow through with the requirement. We cannot say that an additional six months would put the father in the position to reunify with J.R.

**3. Best interests of the child.** The father maintains it is not in J.R.'s best interests to terminate the father's parental rights. At the time of the termination hearing, J.R. was approximately two and a half years of age. He had been removed from his father's custody for over one year. During that period, the father had only one visit with J.R. because of the father's refusal to obtain the evaluation and the resulting ongoing safety concerns. "Once the [statutory] period lapses, termination proceedings must be viewed with a sense of urgency." *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). Termination is in J.R.'s best interests because it will allow him to achieve permanency. *See J.E.*, 723 N.W.2d at 802.

**4. Permissive Factors.** The father maintains termination was not necessary because J.R. is placed with his paternal uncle and because of the strong bond between J.R. and his father. *See* Iowa Code § 232.116(3)(a), (c).

The father upset J.R.'s placement with the paternal uncle in October 2014 by threatening to come get J.R. from the home without DHS's permission. The uncle was concerned about being in violation of the court's order and possible ramifications for his family, so he asked DHS to remove J.R. from the family's home. After speaking with DHS further and talking to an attorney, the uncle

contacted DHS about the family's willingness to be a placement for J.R. again. The family also expressed their willingness to adopt J.R. if the need arose. For these reasons and the aforementioned reasons provided by the juvenile court, the permissive factors do not weigh against the termination of the father's parental rights to J.R.

**IV. Conclusion.**

The mother has failed to take any steps to address her use of methamphetamine, and the children have been out of her custody for over two years. The children could not be returned to her care at the time of the termination hearing, termination was in the children's best interests, and no factor weighs against termination. The father refused to cooperate with DHS after making threats of violence towards others and a statement about harming himself. Thus, an extension of time was not warranted, termination is in J.R.'s best interests, and no factor weighs against termination. We affirm the juvenile court's order terminating the rights of both parents.

**AFFIRMED ON BOTH APPEALS.**