# IN THE COURT OF APPEALS OF IOWA

No. 19-1912
Filed February 5, 2020

**IN THE INTEREST OF M.D.,**
**Minor Child,**

**C.D., Father,**
  Appellant.

_____

Appeal from the Iowa District Court for Polk County, Lynn Poschner, District
Associate Judge.

The father appeals the termination of his parental rights to his child.
**AFFIRMED.**

Randall L. Jackson, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant
Attorney General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, attorney and
guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., Doyle, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2020).

**POTTERFIELD, Senior Judge.**

The father appeals the termination of his parental rights to M.D., born in June 2018. The juvenile court terminated the father's parental rights after determining he abandoned[1] and deserted[2] the child. *See* Iowa Code § 232.116(1)(b). The father challenges the statutory grounds for termination, arguing the Iowa Department of Human Services (DHS) failed make reasonable efforts to reunify the child and father. Additionally, the father maintains DHS failed to authorize contact between him and M.D. and that his lack of contact with M.D. was the result of a no-contact order, not evidence of his intent to abandon the child. He also maintains the court should have applied a permissive factor to save the parent-child relationship, as M.D. remains in the custody of her mother.[3] *See id.* § 232.116(3)(a).

We review termination-of-parental-rights proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

In challenging the statutory grounds for termination, the father maintains DHS failed to make reasonable efforts to reunify him with M.D. But section

---

[1] "Abandonment of a child" is statutorily defined as
> the relinquishment or surrender, without reference to any particular person, of the parental rights, duties, or privileges inherent in the parent-child relationship. Proof of abandonment must include both the intention to abandon and the acts by which the intention is evidenced. The term does not require that the relinquishment or surrender be over any particular period of time.

Iowa Code § 232.2(1) (2019).

[2] "Desertion" is "the relinquishment or surrender for a period in excess of six months of the parental rights, duties, or privileges inherent in the parent-child relationship." *Id.* § 232.2(14). "Proof of desertion need not include the intention to desert, but is evidenced by the lack of attempted contact with the child or by only incidental contact with the child." *Id.*

[3] The State never sought to terminate the mother's parental rights.

232.116(1)(b) does not have a reasonable-efforts requirement. *See In re B.P.*, No. 19-0870, 2019 WL 4298047, at *1 (Iowa Ct. App. Sept. 11, 2019); ("We thus affirm the termination under section 232.116(1)(b). Under this section, reasonable efforts to reunify the parent with the child are not required."); *In re A.D.*, No. 19-0389, 2019 WL 2371928, at *1 (Iowa Ct. App. June 5, 2019) ("Insofar as the mother challenges whether the State made reasonable efforts to reunify her with the children, we note that paragraph (b) does not have a reasonable-efforts requirements."); *In re W.T.S.*, No. 08-0040, 2008 WL 509243, at * 1 (Iowa Ct. App. Feb. 27, 2008) (considering termination pursuant to Iowa Code section 232.116(1)(b), (e), and (h) and only applying the reasonable-efforts argument to paragraphs (e) and (h)); *see also In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) (recognizing the language in paragraphs (c), (d), (e), (g), and (k) "implicates the reasonable effort requirement"—language not found in (b)). Moreover, the father never requested services from DHS or the court until the termination hearing, when he complained for the first time of his lack of contact with the child. Even if reasonable efforts were a component of section 232.116(1)(b), we would not consider the father's argument, as it is not preserved for our review. *See In re L.M.W.*, 518 N.W.2d 804, 807 (Iowa Ct. App. 1994) (providing the reasonableness of services cannot be challenged on appeal when the parent has failed to demand services prior to the termination hearing); *see also In re C.B.*, No. 01-1607, 2002 WL 1072245, at *2 (Iowa Ct. App. May 31, 2002) (affirming the termination of parental rights based on abandonment and refusing to consider unpreserved reasonable-efforts argument).

The father argues that his lack of contact with the child since July 2018— approximately fifteen days after her birth—should be viewed as the fault of DHS,

not evidence he intended to abandon the child. We are not persuaded. We recognize the hurdles preventing contact between the father and M.D. The father was incarcerated for most of the pendency of proceedings and remained in prison at the time of the termination hearing.[4] Additionally, there was a no-contact order between the father and the mother for part of the proceedings and the child remained in the care of the mother. But DHS and family safety, risk, and permanency services could have helped facilitate contact between the father and M.D. DHS did not take an active role in setting up contact between M.D. and the father, but the father—who was represented by counsel throughout the proceedings—never asked for it or for any information about M.D. According to the father's testimony, he last had contact with M.D. in July 2018 and last provided support when he "bought her clothes and stuff like that" in November 2018. The termination hearing took place almost one year later—on October 15, 2019. The father testified he loves M.D. But "parental responsibilities include more than subjectively maintaining an interest in a child. The concept requires parenting to the extent it is practical and feasible in the circumstances." *In re D.M.*, 516 N.W.2d 888, 891 (Iowa 1994) (citation omitted); *see also In re A.B.*, 554 N.W.2d 291, 293 (Iowa 1996) ("Abandonment is characterized as a giving up of parental rights and responsibilities accompanied by an intent to forego them."). And the father's incarceration cannot be used as a justification for his lack of relationship with M.D. *See In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993). There is clear and convincing evidence the father abandoned and deserted M.D.

---

[4] The father testified his discharge date is in 2023.

Next, the father maintains the court should apply a permissive factor to save his relationship with M.D. *See* Iowa Code § 232.116(3)(a) (providing the court need not terminate a parent's rights if "[a] relative has legal custody of the child"). The application of the factors are permissive. *P.L.*, 778 N.W.2d at 39. "[I]t is within the sound discretion of the court, based on the unique circumstances before it and the best interests of the child, whether to apply [a permissive factor] to save the parent-child relationship." *Id.* at 39–40. Here, the mother supported the termination of the father's parental rights because she felt the father was unsafe for her or M.D. to be around. In support of this statement, she testified the father had physically abused her almost every day for the last three years of their four-year relationship—including during her pregnancy with M.D. She expressed her concern the father had yet to take accountability for or understand the impact of his past actions, noting he testified at the termination hearing that while he had been violent toward the mother in the past, it was a "couple altercations, but it wasn't bad" and involved just "arguing, pushing, shoving." In these circumstances, we agree that the application of a permissive factor is unwarranted.

We affirm the termination of the father's parental rights to M.D.[5]

**AFFIRMED.**

---

[5] In *In re Q.G.*, 911 N.W.2d 761, 773–74 (Iowa 2018), our supreme court reversed a chapter 600A termination, concluding it was in the best interests of the children to have a chance at a future relationship with their incarcerated father. Here, the father did not raise a best-interests argument, so we do not discuss the issue. *See In re D.P.*, No. 19-0741, 2019 WL 4678211, at *4 (Iowa Ct. App. Sept. 25, 2019) (Potterfield, J., concurring specially).