# IN THE COURT OF APPEALS OF IOWA

No. 22-1829
Filed March 8, 2023

**IN THE INTEREST OF K.A., K.A., and K.A.,**
**Minor Children,**

**A.A., Mother,**
　　　Appellant.

_____

　　　Appeal from the Iowa District Court for Iowa County, Russell G. Keast, District Associate Judge.


　　　A mother appeals the termination of her parental rights. **AFFIRMED.**


　　　David R. Fiester, Cedar Rapids, for appellant mother.

　　　Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellee State.

　　　Alexander S. Momany of Howes Law Firm, P.C., Cedar Rapids, attorney and guardian ad litem for minor children.


　　　Considered by Bower, C.J., and Badding and Buller, JJ.

**BULLER, Judge.**

The mother of K.A., K.A., and K.A. (born in 2009, 2013, and 2017 respectively), appeals the termination of her parental rights. In her appeal, she argues the State failed to prove a statutory ground for termination, termination is not in the children's best interests, and the juvenile court should have applied a permissive exception to termination. We reject the mother's claims and affirm.

## I.     Background Facts and Proceedings

This family came to the attention of the Iowa Department of Health and Human Services (HHS) in March 2015, two years before the third child was born. The mother reported that the father put her in a "choke hold" and punched her while he was intoxicated. She also described other domestic violence, including some committed while she was pregnant, and at least one instance in which the father knocked a child to the ground or into furniture. HHS made several recommendations, including inpatient treatment and a mental-health evaluation for the father, as well as therapy for the children. No evidence suggests the mother or father followed any of these recommendations.

Alcohol-fueled violence continued inside the home. In December 2018, the father—again intoxicated—struck the mother in the face with an open hand, while she was holding the then-one-year-old child. A sheriff's deputy arrested the father, who resisted and made several threats, even after he was tased. The father told the deputy he planned to return to the house to assault the mother again. Civil and criminal no-contact orders were in place at various points following this and other incidents.

Illegal drugs and mental illness also played a role in the father's violent and dangerous behavior. He was civilly committed at least once in the years before termination, and HHS reports document his use of multiple controlled substances. In August 2019, while under the influence of methamphetamine, the father "choked"[1] the mother in her bed, in view of two children. The police arrested the father again, and three days later, the police received a letter from the mother explaining the entire incident was a misunderstanding and an accident. Because of these incidents, the children were adjudicated as in need of assistance under Iowa Code section 232.2(6)(c)(2) (2019).

Throughout the life of the case and the underlying proceedings, the mother continued to associate with the father, all while denying or minimizing his actions. After months of further incidents and resistance to any efforts to help, HHS sought removal of the children from both parents' custody, which the court granted in March 2021. The next day, the court also entered another no-contact order between the mother and father. Less than one week later, the court returned custody to the mother, so long as the mother engaged in domestic-violence victim services and was more forthcoming and honest in further proceedings. The court also ordered ongoing therapy for the children, no further contact between the father and children, and for the children to reside with their maternal grandparents.

---

[1] We use the word "choked" because that is the language the mother used when reporting the violence to police. However, we note the correct terminology would be "strangled." *See* Mary Pat Gunderson, *Gender and the Language of Judicial Opinion Writing*, 21 Geo. J. Gender & L. 1, 11 (2019) (on how language matters and noting that describing acts of strangulation as "choking" can minimize or mitigate).

The mother continued to associate with the father, sometimes involving the children, and the family failed to progress over the next several months. For example, during this time the father attempted suicide, both the mother and father used methamphetamine, and the domestic abuse continued. The mother also lied to her caseworkers, HHS, and law enforcement about her job status, drug use, and whether she was seeing the father.

Seeing little progress, the juvenile court ordered the mother to complete a psychological evaluation, follow through with treatment recommendations, and comply with drug testing in July 2021. Several months later, the mother began an evaluation with a psychiatrist, but she did not return for a follow-up meeting. With the information he had, the psychiatrist diagnosed the mother with a narcissitic personality disorder and an anxiety disorder, and the psychiatrist opined that she was not ready to end her relationship with the father.

The State then filed a petition to terminate the parental rights of both parents. The juvenile court terminated the father's parental rights, with all prior orders remaining in effect for the mother. The father did not appeal. After trial, the mother continued to refuse any mental-health services or drug testing, and visits with her children never progressed past fully supervised. She also continued to lie about her progress to relevant authorities, associated with the father, associated with other known drug users, and rented out her home to transients.

The State soon filed another petition to terminate the rights of the mother. In October 2022, the juvenile court terminated the mother's parental rights. The mother appeals.

**II.    Standard of Review**

We review termination of parental rights de novo.  *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).  We place weight on the juvenile court's findings of fact, but we are not bound by them.  *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

**III.    Discussion**

Appellate review of the termination of parental rights is a three-step analysis.  *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).  First, we must determine whether a ground for termination has been established; then, if a ground has been established, we determine whether the best-interests framework supports termination; and finally, if we find the framework supports termination, we consider whether any exceptions apply to preclude termination.  *Id.* at 219–20.  The mother challenges all three steps.

**A.  Statutory Grounds**

The juvenile court terminated the mother's parental rights under section 232.116(1)(f), which allows termination if the court finds all of the following:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The mother focuses on the fourth element, arguing the children could have been safely returned to her care at the time of the termination hearing.  *See* Iowa Code § 232.116(1)(f)(4); *see also In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).  The

mother argues that she has reformed herself and—because her domestic abuser, the father, is temporarily gone from her life—the children can safely come live with her now.

We reject the mother's argument, as the evidence shows a reasonable probability the children would face harm if returned to the mother. *See In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992) (holding the State only needs to prove a reasonable probability of the children being harmed if returned to the parent). The mother has ongoing substance-abuse problems with methamphetamine and fentanyl, and there is no evidence these issues have resolved. *See In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (finding unresolved, severe, and chronic drug addiction can render parent unfit to raise children). She has declined to seek help for her issues and has resisted HHS at almost every possible step.

The mother has also declined to meaningfully recognize or engage in treatment for her mental-health issues. She was ordered to complete a psychological evaluation, but she failed to complete a diagnostic assessment. Based on limited information, the psychiatrist still diagnosed the mother with two mental disorders, finding that she was not ready to end her relationship with the father. The psychiatrist also strongly recommended against returning the children to the mother's custody "until she has demonstrated abstinence from illegal substances, completed an extensive course on domestic violence, maintained consistent involvement in individual counseling, and demonstrated an ability to honestly provide accurate information to [HHS] in regard to her relationship with [the father]."

These ongoing concerns gave rise to this termination proceeding, and they remained at the time of trial. The near-permanence of these issues shows a reasonable probability the children would face harm if returned to the mother, which fulfills the statutory criterion. *See M.M.*, 483 N.W.2d at 814.

### B. Best Interests of the Children

The mother next contends the juvenile court erred in determining termination is in the children's best interests because of the closeness of the bond between the children, as well as the closeness of the bond between her and the children. This argument conflates the second and third steps of our analysis: the provisions of Iowa Code section 232.116(2), in which we assess whether termination is in the children's best interests, and section 232.116(3), in which we consider permissive exceptions to termination. We address the steps separately, starting with best interests.

The best interests of the children favor termination. Iowa Code section 232.116(2) outlines the primary factors to consider when assessing whether termination would be in the children's best interests: the children's safety; the best placement for furthering the long-term growth of the children; and the physical, mental, and emotional condition and needs of the children. The defining elements of this analysis are the children's safety and a need for a home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

The mother's inability to address her mental-health and substance-abuse problems undermines her ability to provide adequate care and a safe home for her children. *See* Iowa Code § 232.116(2); *see also A.B.*, 815 N.W.2d at 776. The children are in a stable environment with their grandparents, who are the parties

most likely to adopt them. *See* Iowa Code § 232.116(2)(b) (considering "whether the child[ren] ha[ve] become integrated into the foster family . . . and whether the foster family is able and willing to permanently integrate the child[ren] into the foster family"). With the grandparents, the children are excelling at school, regularly see their therapists, and maintain healthy lives. Terminating the mother's rights and continuing placement with the grandparents is the best option available.

### C. Permissive Exceptions

We decline to find the juvenile court should have applied a permissive exception, as the children's need for a stable and safe placement overrides the bonds between mother and children. *See M.W.*, 876 N.W.2d at 225 (declining to find a permissive exception outweighed the best interests of the children). A parent's love is not enough to prevent termination, nor is the mere existence of a bond. *See In re A.B.*, 956 N.W.2d 162, 169–70 (Iowa 2021); *D.W.*, 791 N.W.2d at 709. For permissive exceptions, the parent claiming the exception has the burden to prove it should apply. *A.S.*, 906 N.W.2d at 476.

The mother has a bond with her children, but she is also unwilling to seek help for her ongoing issues. Because these issues persist, the children would likely face harm if returned to their mother. *See In re S.A.*, 502 N.W.2d 23, 25 (Iowa Ct. App. 1993) (finding a parent's ongoing mental-health and drug concerns made it unsafe to return the child to their care). We find the interests in favor of termination outweigh the bonds between the mother and her children, and she has failed to carry her burden to invoke a permissive exception. *See M.W.*, 876 N.W.2d at 225.

**AFFIRMED.**