# IN THE COURT OF APPEALS OF IOWA

No. 25-0258
Filed April 23, 2025

**IN THE INTEREST OF H.S. and L.S.,**
**Minor Children,**

**K.S., Father,**
          Appellant.
_____

Appeal from the Iowa District Court for Linn County, Carrie K. Bryner, Judge.

A father appeals the juvenile court's order terminating his parental rights to two children. **AFFIRMED.**

John J. Bishop, Cedar Rapids, for appellant father.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney General, for appellee State.

Annette F. Martin, Cedar Rapids, attorney and guardian ad litem for minor children.

Considered without oral argument by Ahlers, P.J., Badding, J., and Mullins, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**MULLINS, Senior Judge.**

A father appeals the termination of his parental rights to two daughters—born in 2010 and 2021. The juvenile court terminated the father's rights pursuant to Iowa Code section 232.116(1)(b) and (f) (2024) as to the older child and section 232.116(1)(b) and (h) as to the younger child.[1] On appeal, he challenges the sufficiency of the evidence supporting the statutory grounds for termination and contends termination is not in the best interests of the children.

We apply a de novo review, evaluating the juvenile court's determination under the three-step framework of Iowa Code section 232.116. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). We confine our discussion to the steps challenged by the father. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Our primary concern is the children's best interests, the defining elements of which are their safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 747–48 (Iowa 2011).

H.S. and L.S. first came to the attention of the Iowa Department of Health and Human Services (HHS) due to concerns of inadequate supervision, physical abuse, and malnourishment. In March 2023, the sisters were removed from their father's care. During the course of the case, HHS learned that H.S., who was then thirteen, had been involved in sexual encounters with adult men. It was also alleged—although never established—that the father "had naked pictures of [H.S.] on his phone that he deleted." Consequently, the juvenile court suspended the father's visitation rights until he agreed to submit to a psychosexual evaluation.

---

[1] The juvenile court also terminated the rights of the children's mother, who does not appeal. Parental rights to a third child born during the pendency of this case are the subject of separate proceedings.

The father never complied. Instead, while H.S. and L.S. remained in foster care, he moved from Monticello to Janesville, Wisconsin. He participated in no further services. His last visit with either girl was approximately one year before the August 2024 termination hearing.

Because we may affirm on "any ground that we find supported by clear and convincing evidence," *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010), we focus our attention on Iowa Code section 232.116(1)(b). Under that provision, the juvenile court may terminate parental rights if it finds "clear and convincing evidence that the child has been abandoned or deserted." Iowa Code § 232.116(1)(b). Abandonment means the intentional "relinquishment or surrender . . . of the parental rights, duties, or privileges inherent in the parent-child relationship." *Id.* § 232.2(1); *see also In re A.B.*, 554 N.W.2d 291, 293 (Iowa Ct. App. 1996). Desertion is the relinquishment or surrender of those rights, duties or privileges "for a period in excess of six months," regardless of the parent's intent. Iowa Code § 232.2(15). Desertion may be "evidenced by the lack of attempted contact with the child or by only incidental contact with the child." *Id.*

The father contends that "the juvenile court made it impossible" to maintain contact with the girls when it suspended visitation pending a psychosexual evaluation. But he offers no explanation for his failure to comply with that order,[2]

---

[2] Despite the father's testimony that logistical barriers prevented him from scheduling an evaluation, the record shows he was booked for one on September 29, 2023. The appointment was canceled after he failed to respond to multiple notices. And while the father also suggests that the juvenile court's order was "without any factual justification," he did not challenge the basis for the order in the proceedings below. *See In re L.M.W.*, 518 N.W.2d 804, 807 (Iowa Ct. App. 1994) ("Challenges to the plan for reunification should have come when the plan was entered.").

and he showed no other effort to maintain his parental rights in the meantime. Participation at the termination hearing is not enough. *See In re D.M.*, 516 N.W.2d 888, 891 (Iowa 1994) (finding abandonment where the father made no attempt to follow the permanency plan, despite his attendance at court hearings); *A.B.*, 554 N.W.2d at 293 (same). Clear and convincing evidence shows the father abandoned or deserted his daughters, providing grounds for termination under section 232.116(1)(b).

The father also contends the State failed to show that termination is in the children's best interests. *See* Iowa Code § 232.116(2). Because he provides no argument as to why, we consider the issue waived. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) ("A broad, all encompassing argument is insufficient to identify error in cases of de novo review."). Notwithstanding, we have reviewed the record and find no reason to disturb the juvenile court's best-interests finding. At the time of the termination hearing, the father testified that he was living "back and forth between my car and [a] homeless shelter in Wisconsin." He had been working for just over a week at a hospital laundry, the name of which he did not know. He was unable to articulate a clear plan for supporting the girls. And he continued to deny responsibility for their removal, stating, "I don't believe I did anything wrong except work too much." These circumstances cast significant doubt on the father's ability to provide for the children's long-term safety and care. By contrast, all of their needs have been satisfied in their foster care placements.[3]

---

[3] Although H.S. and L.S. were placed with different families at the time of the hearing, the case worker testified that HHS planned to seek a shared long-term placement for both girls following termination.

At the hearing, H.S. stated that termination would be "the best thing for [her] right now." The guardian ad litem agreed with respect to both girls. We find termination of the father's parental rights is in the best interests of H.S. and L.S.

**AFFIRMED.**