In the Interest of R.M. and E.M., Children,

D.M., Mother, Appellant.

No. 88–205.

Court of Appeals of Iowa.

Aug. 24, 1988.

Nancy Baumgartner, Linn County Public Defender's Office, Cedar Rapids, for appellant mother.

Thomas J. Miller, Atty. Gen., Kathrine S. Miller–Todd, Asst. Atty. Gen., and Robert A. Kimm, Asst. Linn Co. Atty., for appellee State.

Considered by OXBERGER, C.J., and DONIELSON and HABHAB, JJ.

HABHAB, Judge.

The two children in question (E.M. and R.M.) are boys born in March 1980 and August 1982. They are the youngest of four sons born to D.M. at the time she was married to R.M., Sr. R.M., Sr. denies pa-

ternity of the younger two children and has had little contact with them since the dissolution of his marriage to D.M. We parenthetically note that D.M. had two daughters prior to her marriage to R.M., Sr. and that her parental rights were terminated and her two daughters adopted by their maternal grandparents.

The family, prior to the birth of E.M. and R.M., has received repeated assistance and intervention from the Department of Human Services. All four children were adjudicated to be children in need of assistance in 1983; at that time the four children were removed from the mother's home and were placed in foster care. The two older children were never returned to their mother's care, and the parental rights as to them have been terminated. However, the two younger children were shifted between foster care and the mother's home until March 1986. At that time they were placed in foster care where they have since remained.

In 1987 the State filed a petition to terminate the parental rights of both parents with respect to E.M. and R.M. The children's putative father did not object to the termination.

The evidence shows that the mother has led a chaotic life and has failed utterly to provide a stable home. There is also evidence that she flies into rages which terrorize the children, that she has endangered the children's lives by neglecting to give them medical care, and that she has neglected to provide other basic needs.

The juvenile court terminated the parental rights of both parents. As grounds for termination, it relied on Iowa Code section 232.116(5). The mother has appealed. The father has not. We affirm.

## I.

Appellant asserts she was denied effective assistance of counsel during the proceedings concerning the termination of her parental rights. She alleges this happened in two ways.

First, appellant asserts the juvenile court based its decision to terminate parental rights on economic considerations, and as such violated certain of her constitutional rights. Appellant claims her counsel failed to raise this issue, which resulted in actual prejudice to her.

In another termination of parental rights appeal, *In Interest of J.P.B.*, 419 N.W.2d 387 (Iowa 1988), our supreme court set out the standards for an ineffective assistance of counsel claim to be successful:

The *Strickland* principles require the party claiming ineffective assistance of counsel to show (1) that counsel's performance was deficient, and (2) that actual prejudice resulted. Unless both showings are made, the claim must fail. *Strickland*, 466 U.S. [668] at 687, 104 S.Ct. [2052] at 2064, 80 L.Ed.2d [674] at 693. [ (1984) ]

*In Interest of J.P.B.*, 419 N.W.2d at 390.

We must now determine if appellant met her burden. In doing so, we once again note appellant's contention that the trial court committed error by relying on economic conditions to make its decision. In this regard, the supreme court has said, "[c]ourts are not free to take children from parents simply by deciding another home offers more advantages." *Matter of Burney*, 259 N.W.2d 322, 324 (Iowa 1977). Nor do economic and cultural advantages "tip the balance" in the assessment of parental fitness. *Id.*

If the trial court did in fact base its decision on economic factors alone, then it committed error. We find, however, that this is not the case.

Specifically, the court noted in its ruling and order that R.M. and E.M. had to be removed from D.M.'s custody under an emergency removal due to reports of her "uncontrolled rages." It was felt that the children's emotional as well as physical health was jeopardized by D.M.'s "angry outbursts when she would threaten the children's lives." A case plan was implemented for D.M. and extensive services were provided. E.M. and R.M. were returned to their mother's care in May 1985. They remained with their mother until March 24, 1986, when another emergency removal order issued due to medical ne-

glect of R.M. leading to his hospitalization for pneumonia. The children have since remained in foster care.

There were two review hearings to determine if D.M. had been complying with case plan requirements. The first one, dated April 10, 1986, resulted in the determination that the children could not be protected from harm within their mother's home. After D.M. had been given a "last chance," the second review hearing resulted in the same finding.

The failure of counsel for D.M. to raise constitutional issues was not ineffective assistance of counsel when the record shows no basis for such claims. Economic considerations were not paramount. Stability and control of her behavior and responsibility for her children were more clearly at issue. Since there was no basis for a constitutional claim, appellant was not prejudiced by any failure to raise such claim. Accordingly, we affirm the trial court.

■ The second reason appellant claims she was denied effective assistance of counsel is based on her assertion that she was denied fundamentally fair procedures. In this respect, appellant argues that having six different case workers violated her right to fair procedures.

We find no merit to this claim. D.M.'s parental rights were not terminated because of the utilization of six case workers. They were terminated for the reason that the evidence showed that the children will suffer harm if returned. That counsel did not build a record on this issue is not grounds for an ineffective assistance claim. Counsel for appellant was not deficient in his performance and therefore did not prejudice her case.

## II.

The appellant contends the trial court's decision is not supported by clear and convincing evidence. The law of termination of parental rights is established not only in the Code, but also in case law as set forth below.

■ Iowa Code section 232.116(5) (1987) permits the juvenile court to terminate the parent-child relationship if the child has been adjudicated in need of assistance, has been placed out of the parent's custody for more than twelve of the last eighteen months, and there is clear and convincing evidence that the child will suffer harm specified in Iowa Code section 232.2(6) (1987) if returned to the parent. *See In re K.L.C.*, 372 N.W.2d 223, 227 (Iowa 1985).

■ The types of harm specified in section 232.2(6) include the physical abuse or neglect of the child and the harm caused by the parent's failure to exercise reasonable care in supervising the child. Proof of any one of the types of harm delineated in section 232.2(6) is sufficient to support termination. *See In re K.L.C.*, 372 N.W.2d at 228.

■ Our review of proceedings to terminate a parent-child relationship is de novo. We accord weight to the fact findings of the juvenile court, especially when considering the credibility of the witnesses that the court has heard and observed first hand, but we are not bound by them. Our primary concern is the best interests of the child; although a child's best interest standing alone does not constitute sufficient grounds for termination of parental rights. *Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 554–55, 54 L.Ed.2d 511 (1978).

■ We look to the child's long-range, as well as immediate, interests. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). We consider what the future holds for the child if returned to his or her parents. *Id.* Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing. *Id.* Our statutory termination provisions are preventative as well as remedial. *Id.* They are designed to prevent probable harm to a child. *Id.*

■ The State must prove the allegations of the petition to terminate by clear and convincing evidence. *See Santosky v. Kramer*, 455 U.S. 745, 770, 102 S.Ct. 1388, 1402, 71 L.Ed.2d 599, 617 (1982). This in-

cludes the requirement that before the court may terminate the parental rights there must be clear and convincing proof that the child will suffer harm in a manner specified in section 232.2(6). *See In re Chad*, 318 N.W.2d 213, 219 (Iowa 1982). The child should not be forced to endlessly suffer the parentless limbo of foster care. *Long v. Long*, 255 N.W.2d 140, 146 (Iowa 1977). He or she need not endlessly await the maturity of his or her natural parent. *In Interest of T.D.C.*, 336 N.W.2d 738, 744 (Iowa 1983). Termination must occur if enough time (twelve to eighteen months) has passed and the parent still cannot take care of the child. *Id.*

A review of the record reveals numerous problems surrounding the proper supervision of the children by D.M. At a time when D.M. had the children for several months she failed to attend to the children's physicals for day care and school even after forms were provided and an appointment was made; she was inconsistent in providing medical care; E.M. regressed educationally, emotionally, and socially when placed with her; the children failed to attend school regularly until March 7, 1986; and D.M. lost control of her temper with landlords and baby-sitters and the children's behavior indicate they might still be verbally abused.

On March 24, 1986, the children were removed when R.M. became very ill because he was not receiving proper medication. Problems with the children's care were still noted after removal of the children.

The record also reveals that: D.M. failed to interact with the children during visitation; the children, almost regularly, required hospital emergency care during home visits; and that D.M. failed to administer medication as necessary for the children.

Despite the support services provided D.M. she has displayed an unwillingness to provide for the basic needs of the two children. In addition, D.M.'s lack of supervision and reports of fighting, temper tantrums, and out-of-control behavior led to supervised visitation.

The trial court stated, and we agree, that:

[D.M.] has had three and a half years to work on providing a home for these boys. She has had a myriad of services provided to help her. Yet, she continues to take one step forward and two steps back. To continue these children's placement in temporary foster family care is not in their benefit. As stated in the recent case *In the Interests of A.C., A.C., S.C., S.C., and J.C.*, Iowa Supreme Court filed November 25, 1987:

It is unnecessary to take from the children's future any more than is demanded by statute. Stated otherwise, plans which extend the twelve month period during which parents attempt to become adequate in parenting skills should be viewed with a sense of urgency.

It is clearly in the best interests of these children that they be placed in a permanent, stable, and nurturing home.

The record presents clear and convincing evidence that there was harm to the children caused by both the parent's failure to exercise reasonable care in supervising the child, and neglect. In addition, E.M. and R.M. have been adjudicated children in need of assistance, and they have been out of D.M.'s custody for more than twelve of the last eighteen months. For these reasons and pursuant to Iowa Code section 232.116(5) (1987), we concur with the trial court that D.M.'s parental rights should be terminated.

### III.

The appellant argues that she was denied effective assistance of counsel when counsel's motion for limited remand was denied. However, a failure to obtain limited remand is not prejudicial to appellant since the court's review is de novo—the court may review the law as well as the facts and adjudicate the parent's rights anew. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). Since this court is not bound by the rulings below, the court need

not remand to obtain those rulings. The court has reviewed appellant's case de novo.

The granting or denying of a motion for enlargement of time is clearly within the discretion of the court. In cases involving child custody, the normal time limits are cut in half because of the necessity of not keeping the children waiting any longer than necessary. A failure to grant such continuance is not a denial to appellant of effective assistance of counsel.

For all of the foregoing reasons, the order of the juvenile court terminating the parental rights of D.M. as to E.M. and R.M. is affirmed.

AFFIRMED.