# IN THE COURT OF APPEALS OF IOWA

No. 16-1821/16-1899
Filed February 8, 2017

**IN THE INTEREST OF T.S.-G.,**
**Minor child,**

**C.G., Father,**
    Appellant.

_____

**IN THE INTEREST OF T.S., T.S., T.S.-G., T.S.-E., and J.L.,**
**Minor children,**

**M.L., Mother,**
    Appellant.

_____

        Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block, Associate Juvenile Judge.

        Mother and father appeal an order terminating their respective parental rights pursuant to Iowa Code chapter 232 (2016). **AFFIRMED ON BOTH APPEALS.**

        Nina M. Forcier of Forcier Law Office, P.L.L.C., Waterloo, for appellant father.

        Michelle M. Jungers of Iowa Legal Aid, Waterloo, for appellant mother.

        Thomas J. Miller, Attorney General, and Gretchen W. Kraemer, Assistant Attorney General, for appellee State.

Melissa A. Anderson-Seeber of State Public Defender, Waterloo, guardian ad litem for minor children.

Considered by Danilson, C.J., and Doyle and McDonald, JJ.

**MCDONALD, Judge.**

Melanie, the mother of five children, and Clayton, the father of one of those children, appeal from the order terminating their respective parental rights. Melanie's parental rights were terminated pursuant to Iowa Code section 232.116(1)(e), (f), and (h) (2016). Clayton's parental rights were terminated pursuant to Iowa Code section 232.116(1)(e). On appeal, the mother challenges the sufficiency of the evidence supporting the statutory grounds authorizing the termination of her parental rights and contends the juvenile court should have given her an additional six months to work toward reunification with the children. The father also challenges the sufficiency of the evidence supporting the statutory ground authorizing the termination of his parental rights. He also contends the juvenile court should have given him an additional six months to work toward reunification with the children. He further argues termination of his parental rights is not in the child's best interests and his bond with the child should serve to preclude termination.

I.

The children at issue are Tr.S. (born 2008), Ta.S. (born 2009), T.S.-G. (born 2011), T.S.-E. (born 2014), and J.L. (born 2015). Clayton is the father of T.S.-G. The fathers of Tr.S. and T.S.-E. do not appeal the terminations of their rights. The father(s) of Ta.S. and J.L. are unknown.

The Iowa Department of Human Services (hereinafter "IDHS") has been involved with this family for a significant period of time. In 2010, a founded report of child abuse was entered arising out of Melanie's failure to feed Ta.S. In 2014, IDHS initiated a sex-abuse investigation regarding T.S.-E.'s father. The

investigation did not result in a founded report of sex abuse. Instead, IDHS founded a report of abuse arising out of T.S.-E.'s father kicking or throwing a trash can that hit Ta.S. There were additional investigations regarding abuse of the children, but none resulted in founded reports.

In May 2015, the family again came to the attention of IDHS. IDHS suspected Melanie, her paramour, and the children's grandmother were using methamphetamine in the home around the children. Melanie was pregnant with J.L. at the time. The home environment was chaotic, with inappropriate persons coming, going, and residing in the home. The home itself was dirty and unsafe. The children were dirty, uncared for, and unsupervised. The children were removed from the home. J.L. was removed from Melanie's care shortly after the child's birth. Melanie told hospital staff she expected the child to test positive for methamphetamine. In addition, hospital staff observed Melanie was unable or unwilling to provide for the child. Melanie refused to breastfeed or bottlefeed the child and instead focused on texting with her cell phone.

IDHS initiated some services for the family but failed to provide others. In August 2015, IDHS was ordered to complete a home study of Clayton's home within two weeks. IDHS failed to complete the home study until October 5 and then did not file the home study report until the day before a scheduled dispositional hearing. Following the hearing, the juvenile court found IDHS had failed to make reasonable efforts to prevent continued removal, citing the failure to timely complete the home study and file reports. The juvenile court ordered T.S.-G. placed in Clayton's care.

Despite the receipt of some services, the parents did not make progress in addressing the issues giving rise to removal. Melanie missed some scheduled drug tests and, on one occasion, tested positive for methamphetamine. She did not address her erratic behavior and mental-health needs. On one occasion, she faked her own death on Facebook to see which of her friends mourned her. In February 2016, T.S.-G. was removed from Clayton's home because Clayton was noncompliant with court orders, was not cooperating with services, and was intending to move out of state with the child. Clayton then refused supervised visitation with the child. Several months later, in May 2016, Clayton was incarcerated for violating a domestic abuse no-contact order.

The State filed petitions to terminate the parents' respective rights in the children, which the juvenile court granted. Melanie and Clayton each timely filed appeals, which were consolidated.

## II.

We review proceedings terminating parental rights de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The statutory framework is well established. Pursuant to section 232.116(1), the State must prove a statutory ground authorizing the termination of a parent's rights. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). Section 232.116(1) sets forth the harms the legislature has determined to be of sufficient concern to justify the breakup of the family unit. It is not sufficient to prove the parent engaged in immoral or illegal conduct without a showing of statutory harm. *See* Oliver Wendell Holmes, Jr., *The Path of the Law*, 10 Harv. L. Rev. 457, 459 (1897) ("The first thing for a business-like understanding of the matter is to understand its limits, and

therefore I think it desirable at once to point out and dispel a confusion between morality and law, which sometimes rises to the height of conscious theory, and more often and indeed constantly is making trouble in detail without reaching the point of consciousness."). Second, pursuant to section 232.116(2), the State must prove termination of parental rights is in the best interest of the child. *See P.L.*, 778 N.W.2d at 39. Third, if the State has proved both the existence of statutory harm and termination of a parent's rights is in the best interest of the child, the court must consider whether any countervailing considerations set forth in section 232.116(3) should nonetheless serve to preclude termination of parental rights. *See id.* These countervailing considerations are permissive, not mandatory. *See A.M.*, 843 N.W.2d at 113. "The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011).

The State has the burden to prove its case by clear and convincing evidence. *See* Iowa Code § 232.96. Clear and convincing evidence is more than a preponderance of the evidence and less than evidence beyond a reasonable doubt. *See In re L.G.*, 532 N.W.2d 478, 481 (Iowa Ct. App. 1995). It is the highest evidentiary burden in civil cases. It means there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence. *See id.* This significant burden is imposed on the State to minimize the risk of an erroneous deprivation of the parent's fundamental liberty interest in raising his or her child. *See Santosky v. Kramer*, 455 U.S. 745, 759 (1982). We therefore cannot rubber stamp what has come

before; it is our task to ensure the State has come forth with the quantum and quality of evidence necessary to prove each of the elements of its case. *See id.* at 769.

### III.

### A.

We first address the statutory grounds authorizing the termination of the parents' respective rights.

Clayton's parental rights were terminated pursuant to section 232.116(1)(e), which provides for termination when the child has been adjudicated in need of assistance, has been removed from the physical custody of a parent for at least six consecutive months, and

> [t]here is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. For the purposes of this subparagraph, "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

Iowa Code § 232.116(1)(e). The only element at issue is whether Clayton failed to maintain significant and meaningful contact with the child.

We conclude there is clear and convincing evidence Clayton failed to maintain significant and meaningful contact with the child. After the child was removed from Clayton's care in February 2016, Clayton had only one visitation with the child. He refused further visitation. He had no contact with the child

after his incarceration in May 2016. He failed to complete the responsibilities prescribed in the case permanency plan, make efforts to communicate with the child, or make an effort to maintain a place of importance in the child's life. Clayton's incarceration does not excuse his failure to assume the duties of being a parent. *See In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993) (stating parent cannot "use his incarceration as a justification for his lack of relationship with the child," especially when "the incarceration results from a lifestyle that is chosen in preference to, and at the expense of, a relationship with the child"); *In re Marriage of Daniels*, 568 N.W.2d 51, 55 (Iowa Ct. App. 1997) ("Domestic abuse is, in every respect, dramatically opposed to a child's best interests.").

We next address the grounds authorizing the termination of Melanie's parental rights. "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We examine the evidence supporting the parallel provisions in section 232.116(1)(f) and (h). As relevant here, the State must prove the child cannot be returned to the custody of the child's parents at the time of the termination hearing as provided in section 232.102. *See* Iowa Code § 232.116(1)(f), (h). As part of its ultimate proof, the State must also establish it made reasonable efforts to return the child to the child's home. *See* Iowa Code § 232.102(7) (providing IDHS must make "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"); *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). "[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of

the efforts by the [IDHS] to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts." *C.B.*, 611 N.W.2d at 493. The nature of the reasonable-efforts mandate is determined by the circumstances of each case. *See id.* (discussing scope of mandate).

Melanie argues IDHS failed to make reasonable efforts to reunify the family. We disagree. IDHS provided at least the following services to the family: family foster care, suitable relative placements, safety services, child welfare services, CASA, random drug testing, prenatal care, early access, AEA programming, hospitalizations, evaluations for substance abuse and mental health, play therapy, mental health programming, medication management, parent partner, head start, paternity testing, and visitation. *See In re H.L.B.R.*, 567 N.W.2d 675, 679 (Iowa Ct. App. 1997) ("We cannot say reasonable efforts were not made. It is conceded the reasonable efforts made were not successful.").

We conclude the State proved the children could not be returned to Melanie's care at the time of the termination hearing. Melanie has a history of untreated mental-health conditions, including depression, bipolar disorder, and borderline personality disorder. In this case, Melanie failed to treat her mental health conditions. The providers were clear and unanimous that Melanie was unable to control her emotions and "reactive" behavior. Further, Melanie has not corrected many of her behaviors that place the children at risk of harm. She lacks employment and stable housing and cannot meet the needs of the children. She is indiscriminate in her relationships, introducing dangerous men into the

children's lives. The children have reported physical abuse, domestic violence, sex abuse, and substance abuse in the home, but they are unable to identify the perpetrators because of the transitory nature of Melanie's relationships. In short, Melanie's conduct presents an appreciable risk of adjudicatory harm to the children.

B.

Having found the statutory grounds for termination proved, we must still determine whether termination of the parents' respective rights is in the children's best interests. *See P.L.*, 778 N.W.2d at 41. "We consider what the future holds for the child[ren] if returned to [their] parents." *In re R.M.*, 431 N.W.2d 196, 199 (Iowa Ct. App. 1988).

There is little doubt the termination of the parent's respective rights is in the best interest of the children. With respect to Clayton, Clayton failed to address many of the issues giving rise to removal of the child. He failed to comply with drug testing. He continued to engage in criminal conduct. He refused to meet with case managers. The evidence also showed dramatic, negative changes in the child after being placed with Clayton. The child was observed to be bruised. The child also began acting out in sexual ways not previously observed. She was also fearful of returning to Clayton's care.

With respect to Melanie, as noted above, Melanie continues to engage in conduct creating an appreciable risk of adjudicatory harm to the children. The children have been negatively impacted. They demonstrate inappropriate sexual behaviors. They wet themselves prior to visitation. One child defecated on the floor of the school. The IDHS case worker testified:

> So we know that the kids struggled and suffered and now looking at their behaviors and being able to work with them and therapists, we know that there's a long pattern of trauma for these kids and they need stability, which fortunately it seems as though all of them have found that at this point [in foster care]. And they need to be able to move on and not have to worry about what their parents are doing, if their parents are safe, if their parents are in jail. They just need to be kids.

We echo that sentiment. *See P.L.*, 778 N.W.2d at 41 ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child.").

## C.

Clayton contends the strength of the parent-child bond should serve to preclude termination. *See* Iowa Code § 232.116(3)(c). Section 232.116(3)(c) provides the court may avoid termination if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." The factor is permissive, and the court may use its discretion in deciding whether to apply the factor to continue the parent-child relationship. *See A.M.*, 843 N.W.2d at 113. Our consideration is not merely whether there is a parent-child bond, "our consideration must center on whether the child would be disadvantaged by termination, and whether the disadvantage overcomes" the father's inability to meet the needs of the child. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). There is no evidence the child would be disadvantaged by the termination of Clayton's rights. We decline to preserve the parent-child relationship.

D.

Both parents request an additional six months to work toward reunification. To grant additional time, a court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

There is little to no evidence supporting the conclusion the need for removal from Clayton would be resolved at the end of the six-month period. At the time of the termination hearing, Clayton was in jail. He has a history of criminal conduct. *See In re J.B.L.*, 844 N.W.2d 703, 705–06 (Iowa Ct. App. 2014) (examining father's criminal history in denying request for additional time). He has been uncooperative and threatening over the life of the case and shows no signs of changing. He actually takes great pride in being difficult and uncooperative—for example, he was proud of his refusal to comply with drug testing. There is thus little hope Clayton would correct his behaviors.

There is also no evidence the mother would be able to address her many needs and behaviors with an additional six months. The IDHS case worker testified an additional six months would not improve the situation because she did not expect Melanie to address the concerns with her parenting, but also because the children had become so "resistive" that it would be difficult emotionally to improve their situation. Melanie has been involved with IDHS for a number of years but continues to engage in unsafe behaviors. What's past is prologue.

The parents' efforts are too little, too late, for these children. "A parent cannot wait until the eve of termination . . . to begin to express an interest in parenting." *C.B.*, 611 N.W.2d at 495. These children deserve stability in their lives. "Time is a critical element." *Id.* We will not make the children wait any longer for that stability.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED ON BOTH APPEALS.**