# IN THE COURT OF APPEALS OF IOWA

No. 17-0025
Filed April 5, 2017

IN THE INTEREST OF A.H., S.S., and T.S.,
Minor children,

J.S., Mother,
        Appellant.
_____

Appeal from the Iowa District Court for Webster County, Angela L. Doyle, District Associate Judge.

Mother appeals from an order terminating her parental rights pursuant to Iowa Code chapter 232 (2016).  **AFFIRMED.**

Derek J. Johnson of Johnson and Bonzer, P.L.C., Fort Dodge, for appellant mother.

Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Assistant Attorney General, for appellee State.

Neven J. Conrad of Baker, Johnsen, Sandblom & Lemmenes, Humboldt, guardian ad litem for minor children.

Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

Jennifer, the mother, appeals from an order terminating her parental rights in her three children, A.H, born in 2009, T.S., born in 2011, and S.S., born in 2014. The juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(f) and (h) (2016). On appeal, the mother contends the juvenile court should have deferred permanency for an additional six months to allow her more time to reunify with the children. She also contends the termination of her parental rights was not in the best interests of the children. Finally, she argues the district court erred in admitting into evidence certain mental health reports.

"We review proceedings terminating parental rights de novo." *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014) (citing *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)). The statutory framework governing termination proceedings is well established. Pursuant to section 232.116(1), the State must prove a statutory ground authorizing the termination of a parent's rights. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). Section 232.116(1) sets forth the harms the legislature has determined to be of sufficient concern to justify the breakup of the family unit. Second, pursuant to section 232.116(2), the State must prove termination of parental rights is in the best interests of the child. *See id.* Third, if the State has proved both the existence of statutory harm and termination of a parent's rights is in the best interests of the child, the juvenile court must consider whether any countervailing considerations set forth in section 232.116(3) should nonetheless preclude termination of parental rights. *See id.* These countervailing considerations are permissive, not mandatory. *See A.M.*, 843

N.W.2d at 113. "The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011) (citing *In re C.L.H.*, 500 N.W.2d 449, 454 (Iowa Ct. App. 1993).

The State has the burden to prove its case by clear and convincing evidence. "Clear and convincing evidence is more than a preponderance of the evidence and less than evidence beyond a reasonable doubt." *In re L.G.*, 532 N.W.2d 478, 481 (Iowa Ct. App. 1995) (citing *King v. King*, 291 N.W.2d 22, 24 (Iowa 1980)). "It is the highest evidentiary burden in civil cases. It means there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *In re M.S.*, 889 N.W.2d 675, 679 (Iowa Ct. App. 2016)*.* This significant burden is imposed on the State to minimize the risk of an erroneous deprivation of the parent's fundamental liberty interest in raising his or her child. *See Santosky v. Kramer*, 455 U.S. 745, 759 (1982). We therefore cannot rubber stamp what has come before; it is our task to ensure the State has come forth with the quantum and quality of evidence necessary to prove each of the elements of its case. *See id.* at 769.

The family came to the attention of the Iowa Department of Human Services (hereinafter "IDHS") in October 2015 after the two older children were found wandering outside alone at night. This was the fourth time the children were returned to the home by law enforcement. At the time of the incident, Jennifer was married to and living with Jeremy, the father of the two younger children. IDHS's investigation raised concerns regarding the ability of the mother

and the father to provide for the basic needs of the children, including proper feeding and supervision. IDHS also had concerns regarding domestic violence in the home. IDHS removed the children from the home. Subsequent to removal, based on additional information obtained from A.H., a child protective assessment was founded against Jeremy for sexual abuse, lascivious acts with a child. A.H. was the victim of Jeremy's conduct.

The mother and the children have mental-health conditions. Jennifer has an intellectual disability and untreated mental-health conditions. She has an IQ of 62. She was diagnosed with anxiety and depressive disorder. At the initiation of this case, Jennifer engaged in treatment for her mental-health conditions. She was discharged unsuccessfully, however, for the failure to attend her sessions. T.S. was diagnosed with attention deficit hyperactivity disorder and developmental speech delay. He is on the autism spectrum. He engages in violent acts of harm to self and others. A.H. was diagnosed with attention deficit hyperactivity disorder, post-traumatic stress disorder, disinhibited social engagement disorder, and unspecified intellectual disability. A.H. engages in inappropriate conduct, including aggression and sexualized behavior, such as public masturbation. S.S. is developmentally delayed and is being evaluated for autism.

Jennifer does not challenge the sufficiency of the evidence supporting the statutory grounds authorizing the termination of her parental rights. She does contend, however, the juvenile court should have deferred permanency for an additional six months to afford her more time to seek reunification with her children. To defer permanency for six months, the juvenile court was required to

"enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

The juvenile court denied the requested extension for the following reasons:

> Here, Jennifer's past conduct demonstrates that it is unlikely the grounds for removal will no longer exist in six months. Before their removal, Jennifer was not fully engaged in the care and supervision of the children. Jennifer has not gained any greater insight into the care and supervision of her children at this time, despite extensive services. She has not attended appointments with doctors or participated in the children's mental health therapy and medication management. She has attended some of the AEA and speech appointments only because they are held jointly with Early Head Start sessions. Jennifer does not have any idea who her children's medical providers, service providers and mental health providers are. The children have mental health and behavioral issues that need consistency. [A.H.] exhibits sexual behaviors, and [T.S.] bangs his head and bites when upset. Jennifer has failed to show any interest in working with the doctors and other providers in meeting the needs of her children.

> The request for additional time to seek reunification is denied. There is nothing in the extended history of this case that allows the Court to conclude that there is a reasonable likelihood that real change will occur that will eliminate the need for removal over the next six months.

We adopt the juvenile court's findings and conclusions as if our own. There is no evidence supporting the conclusion that the "need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

Having concluded there was no reason to defer permanency for an additional six months, we must still determine whether the termination of

Jennifer's parental rights is in the children's best interests. *See P.L.*, 778 N.W.2d at 41. "We consider what the future holds for the child[ren] if returned to [their] parents." *In re R.M.*, 431 N.W.2d 196, 199 (Iowa Ct. App. 1988) (citing *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981)).

We conclude termination of Jennifer's parental rights is in the best interests of the children. As stated above, Jennifer has demonstrated over time an inability to safely care for the children. This is evidenced by the children repeatedly wandering away from the home, sexual abuse of A.H., and the inability to supervise the children during visitation. This is further evidenced by Jennifer's admitted inability to obtain safe and appropriate housing for herself and the children. Finally, this is evidenced by Jennifer's failure to involve herself in the children's medical and mental-health treatment. Jennifer's failure to understand the nature of the children's unique developmental and mental-health needs militates strongly in favor of terminating her parental rights. The children are bonded with their respective caregivers, and the caregivers wish to adopt the children. The children are doing better with their respective caregivers. Their negative behaviors are lessening. This also militates in favor of terminating parental rights. *See* Iowa Code § 232.116(2)(b) (stating it is a relevant consideration "whether the foster family is able and willing to permanently integrate the child into the foster family").

While the mother in this case clearly loves her children, "[i]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*,

778 N.W.2d at 41 (citing *Dameron*, 306 N.W.2d at 747). "It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." *A.B.*, 815 N.W.2d at 778 (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997)).

We lastly address Jennifer's contention the juvenile court erred in admitting into evidence certain mental health reports. Specifically, Jennifer contends the juvenile court should not have considered any mental-health reports regarding the children. She contends the State failed to lay proper foundation for the reports. There was no error. *See* Iowa Code § 232.96(6) (allowing the admission of "[a] report, study, record, or other writing or an audiotape . . . recording made by [DHS], a juvenile court officer, a peace officer or a hospital . . . notwithstanding any objection to hearsay statements contained [with]in," if it is relevant and not unduly prejudicial); *In re K.F.*, 437 N.W.2d 559, 563 (Iowa 1989) (stating "evidence properly admissible in an adjudication proceeding should be accorded the same standard of admissibility in a subsequent termination hearing").

For the foregoing reasons, we affirm the order terminating Jennifer's parental rights.

**AFFIRMED.**