# IN THE COURT OF APPEALS OF IOWA

No. 24-0503
Filed June 5, 2024

**IN THE INTEREST OF J.S. and S.S.,**
**Minor Children,**

**J.S., Mother,**
    Appellant,

**J.S., Father,**
    Appellant.
_____

    Appeal from the Iowa District Court for Johnson County, Joan M. Black,

Judge.


    Parents separately appeal the termination of their parental rights.

**AFFIRMED ON BOTH APPEALS.**


    Matthew Shimanovsky, Iowa City, for appellant mother.

    Christopher J. Foster of Foster Law Office, Iowa City, for appellant father.

    Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney

General, for appellee State.

    Sara Strain Linder of Linn County Advocate, Inc., Cedar Rapids, attorney

and guardian ad litem for minor children.


    Considered by Tabor, P.J., and Greer and Badding, JJ.

**BADDING, Judge.**

One step forward by these parents was always followed by one step back, leaving them in almost the same place they started after sixteen months of services. This oscillation between progression and regression resulted in termination of the parents' rights to their two children—born in 2014 and 2018—under Iowa Code section 232.116(1)(f) (2024). On appeal, both parents challenge the sufficiency of the evidence supporting the ground for termination,[1] argue termination is not in the children's best interests, claim the court should have applied permissive exceptions, and request more time to work toward reunification.

## I. Background Facts and Proceedings

In October 2022, the Iowa Department of Health and Human Services received a report that the parents were living in a storage unit with their two children and several dogs.[2] The mother was reportedly using methamphetamine. The State obtained an order for temporary removal and filed child-in-need-of-assistance petitions. The parents avoided law enforcement and the department for almost two weeks. Once they were located in early November, the children were placed in foster care, and the mother was arrested on pending warrants.

---

[1] Both parents' petitions on appeal challenge the final element in section 232.116(1)(h). We consider their arguments as challenges to the final element of the ground under which their rights were terminated, section 232.116(1)(f), which is essentially identical to the final element in section 232.116(1)(h).

[2] This was not the parents' first interaction with the department. The mother's rights have been terminated to four other children. The father's rights were terminated to two of these children as well. And in May 2020, the family voluntarily participated in services to remedy unsanitary conditions in their home.

Both children tested positive for methamphetamine. They were adjudicated as children in need of assistance later that month.

The father tested positive for methamphetamine in late November and early December. But later in December, the father (who had a medical marijuana card) was only testing positive for THC. The mother was negative for all substances on her drug tests in November and December. Meanwhile, the parents remained homeless. The mother tested positive for methamphetamine in February 2023 and the father in March. By May, however, the parents had secured suitable housing, engaged in outpatient substance-use treatment, and progressed to semi-supervised visits.

From there, the mother consistently tested negative for all drugs, at least until late July, when she began testing positive for THC. But by then, she had secured a medical marijuana card like the father. On two occasions in July and August, the mother also tested positive for cocaine. The father tested positive for cocaine five times between June and September, and he had a positive test for methamphetamine in both May and July. He was also regularly positive for THC. Because of the parents' positive drug tests, and an incident where the mother seemed to be under the influence at the oldest child's school, visits reverted to fully supervised in August.

Despite this inconsistent stretch of sobriety for the parents, they maintained their housing through the permanency hearing in October. But the condition of their apartment, where they kept one dog and five puppies, had deteriorated. Both were unemployed, and neither had transportation. Still, the department recommended giving the parents more time due to some of the progress they had

made. The court granted that request in its permanency order, extending the goal of reunification for three months.

In those next three months, the parents consistently tested negative for drugs, except THC. They started parenting education in October, and they again progressed to semi-supervised visits in November. But in late December, the parents were evicted from their apartment. Though they had known eviction was possible since November, they did not tell the department until after it happened. When they were evicted, the apartment had a heavy smell of cigarette smoke, and the floor of the children's bedroom was covered in dog feces. The parents told the department they planned to stay in a hotel for a few days and then "couch surf" with some friends. Their visits returned to fully supervised.

With this instability, the department recommended proceeding to termination of parental rights. The State filed its petitions in January 2024. Soon after, the father had another positive test for methamphetamine. The parents obtained new substance-use evaluations and housing in February. But the department was concerned about the parents' ability to maintain that housing given their continued unemployment and financial instability.

The termination hearing was held in March. Both parents testified they had not used drugs, other than marijuana, since October 2022. The biggest issue at the hearing was the parents' financial instability. Their sole source of income was the father's social security disability benefits of $946 per month. The housing they had recently obtained was a trailer they were buying on contract. The children's paternal grandfather, who had just been released from prison, was covering the contract payments of $1000 per month. The parents' other monthly expenses—

including the cost of their marijuana—left them with almost no disposable income. Yet neither parent planned to find a job, though the mother was applying for social security disability. And they had no plan for what would happen if the paternal grandfather stopped covering their monthly trailer payment before it was paid off. Their general answer was that they could rely on others to help them out.

One of the department caseworkers testified the parents were only able to show limited "periods of change" before sliding "back downhill." While the worker acknowledged the parents had suitable housing at the termination hearing, she believed their "ups and downs" with housing and finances prevented a return of custody then or in the foreseeable future. The other caseworker who was involved with the family echoed that belief. And while she recognized a bond between the parents and children, she still recommended termination because

> it's been too long of a period of time of instability. It's been almost a year and a half now, and although the children love their parents, they're stuck in limbo right now, and they just have no way of knowing what the future holds for them, and it's a very critical period of their childhood.

In its ruling, the juvenile court surveyed the parent's housing and financial instability over the last several years and observed those problems remained. The court was also concerned with the positive drug tests that continued to pop up, mostly for the father. Based on those concerns, the court found the children could not be returned to parental custody, termination was in the children's best interests, and no permissive exceptions applied. Both parents appeal separately.

## II.    Analysis

We review terminations of parental rights de novo, applying a three-step analysis that asks whether (1) a statutory ground for termination is satisfied, (2) the

children's best interests are served by termination, and (3) a statutory exception applies and should be exercised to preclude termination. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022); *see also* Iowa Code § 232.116(1)–(3). If those steps support termination, we consider any other issues raised by the parents, such as whether additional time should be granted. *See* Iowa Code § 232.104(2)(b).

### A.     Ground for Termination

In their mirroring claims, the parents challenge the State's proof of the final element of section 232.116(1)(f), that the children could not be safely returned to parental custody at the time of the termination hearing.[3] *See* Iowa Code § 232.116(1)(f)(4) (requiring clear and convincing evidence that child cannot be returned to parental custody "at the present time"); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").

Both parents argue they have a suitable home for the children. And they assert that their limited income is not enough to prevent a return of custody. We agree that parental rights cannot be terminated based on economic factors alone. *See In re R.M.*, 431 N.W.2d 196, 198 (Iowa Ct. App. 1988). But there was more than that here. The parents struggled to maintain stable housing throughout these proceedings, not because of their finances but because of their dogs, which they still had at the termination hearing. Beyond that issue was the parents' intermittent

---

[3] *See In re B.W.*, No. 23-0518, 2023 WL 4759462, at *3 n.5 (Iowa Ct. App. July 26, 2023) (discussing the two interpretations in our case law for finding that children "cannot be returned" to parental custody). Our conclusion is the same under either interpretation.

positive drug tests, with the father testing positive for methamphetamine just over a month before the termination hearing. Given that the parents were codependent, this circumstance likewise prevented a return of custody to either parent. *See, e.g., In re C.H.*, No. 23-1079, 2023 WL 7015345, at *2 (Iowa Ct. App. Oct. 25, 2023) ("The mother's positive test for methamphetamine two months before the termination hearing precluded the children's return to her custody."). We find this evidence sufficient to support termination under section 232.116(1)(f).

### B.     Best Interests

Turning to the second step, both parents argue termination is contrary to the children's best interests. In considering that question, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). Neither parent addresses these best-interest factors. Instead, they only argue termination goes against the children's best interests because the children share a "strong bond" with them. "Consideration of the parent-child bond is not a part of our best-interests analysis." *In re E.S.*, No. 23-0590, 2023 WL 4104126, at *2 (Iowa Ct. App. June 21, 2023). This claim is more properly addressed under the third step for permissive exceptions, discussed below. *In re L.L.*, No. 24-0431, 2024 WL 2045335, at *3 (Iowa Ct. App. May 8, 2024).

### C.     Permissive Exceptions

The parents ask that we apply the permissive exceptions to termination in section 232.116(3)(a) and (c). But the children were in the legal custody of the department rather than a relative, so section 232.116(3)(a) does not apply. *See,*

*e.g.*, *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). In turn, section 232.116(3)(c) authorizes the court to forgo termination when it "would be detrimental to the child . . . due to the closeness of the parent-child relationship." Without question, the record shows that children are bonded to their parents and enjoy spending time with them. But a bond is not, by itself, enough to avoid termination. *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) ("[T]he existence of a bond is not enough."). Neither parent presented evidence that either child would suffer physically, mentally, or emotionally upon termination. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) ("[T]he parent resisting termination bears the burden to establish an exception."). And we cannot conclude any disadvantage to the children overcomes the continued instability they will experience in their parents' care. *See D.W.*, 791 N.W.2d at 709 (noting the critical question is "whether the child[ren] will be disadvantaged by termination, and whether the disadvantage overcomes [the parents'] inability to provide for [the children's] developing needs"). So this exception does not apply either.

**D.     Additional Time**

A grant of additional time to work toward reunification is appropriate only if we can conclude "the need for removal . . . will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). In arguing they should be granted more time,[4] the parents challenge the juvenile court's findings that they prioritize their own wants and needs over the children and that their multiple dogs

---

[4] We note the juvenile court did not rule on the parents' requests for more time, so error is not preserved. *See, e.g.*, *In re Z.F.*, No. 23-1416, 2024 WL 1297009, at *7 (Iowa Ct. App. Mar. 27, 2024). We choose to bypass this deficiency and proceed to the merits. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999).

played a role in their eviction from their apartment in December 2023. The record supports the former finding, and the mother testified to the latter.

In any event, these facts have little bearing on the critical question of whether the need for removal will continue to exist after the requested extension. On that question, the parents seem to acknowledge that their progress was continually followed by regression. Yet the mother maintains there is no reason to think they "would not rapidly recover[ ] the lost ground as they had done previously," and the father submits "they were on track to make substantial progress in the near future." But neither points to any "specific factors, conditions, or expected behavioral changes" they intend to make that will prevent the past from repeating. *See id.* On this record, we conclude that any step forward will, like before, be followed by a step backward. *See In re J.E.,* 723 N.W.2d 793, 798 (Iowa 2006) (looking to the "parent's past performance because it may indicate the quality of care the parent is capable of providing in the future"); *see also In re K.F.,* No. 14-0892, 2014 WL 4635463, at *4 (Iowa Ct. App. Sep. 17, 2014) ("What's past is prologue."). And we have declined to defer permanency where a parent has tested positive for methamphetamine in the months leading up to the termination hearing. *See In re E.W.,* No. 24-0186, 2024 WL 1552597, at *2 (Iowa Ct. App. Apr. 10, 2024) (collecting cases). As a result, we conclude additional time is unwarranted.

## III.   Conclusion

We affirm the termination of both parents' rights.

**AFFIRMED ON BOTH APPEALS.**